## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David L. Boone,                                                             Civil No. 07-3922 (DWF/AJB)
doing business as
Craft Plumbers,

            Plaintiff and
            Counterclaim Defendant,

v.                                                                                   **MEMORANDUM**
                                                                                   **OPINION AND ORDER**

Wells Fargo Bank, N.A.,

            Defendant and
            Counterclaimant.

---

Bryan R. Battina, Esq., Elizabeth A. Mikesell, Esq., and Michael H. Frasier, Esq., Bock & Battina, LLP, counsel for Plaintiff and Counterclaim Defendant.

Richard T. Thomson, Esq., and Amy L. Schwartz, Esq., Lapp Libra Thomson Stoebner & Pusch, Chartered, counsel for Defendant and Counterclaimant.

---

## INTRODUCTION

      This matter is before the Court upon a Motion for Summary Judgment brought by Defendant and Counterclaimant Wells Fargo Bank, N.A. ("Wells Fargo"). In that motion, Wells Fargo seeks summary judgment with regard to the Complaint brought by Plaintiff and Counterclaim Defendant David L. Boone, doing business as Craft Plumbers ("Plaintiff"), and on its counterclaim against Plaintiff. For the reasons set forth below, the Court grants Wells Fargo's motion.

**BACKGROUND**

Plaintiff was a banking customer of Wells Fargo and used his Wells Fargo checking account for personal purposes as well as for his business, Craft Plumbers. In 1999, Plaintiff obtained a $5,000 preferred line of credit ("PLOC") from Wells Fargo which provided overdraft protection for his checking account. In 2004, Plaintiff also obtained a $60,000 equity line of credit ("ELOC") from Wells Fargo.[1] Plaintiff alleges that his ELOC was also intended to provide overdraft protection for his checking account but that it did not operate in this manner and, as a result, he bounced checks and incurred overdraft fees on numerous occasions. Plaintiff alleges that when he sought to correct this problem, Wells Fargo "forced" Plaintiff to open two additional accounts, a personal checking account and a business card account. (Compl. ¶ 13.) Plaintiff indicates he was told that this was the only way to solve his overdrafting problem. In 2005, Plaintiff also obtained a business line of credit ("BLOC") in the amount of $15,000 from Wells Fargo.

Plaintiff alleges, however, that he continued to experience overdrafting problems, including bounced checks and overdraft fees. Plaintiff indicates that these events harmed his reputation and that of his business and that his professional insurance carrier discontinued his coverage due to checks returned for insufficient funds. Plaintiff alleges

---

[1] Plaintiff alleges that the mortgage for the ELOC was recorded against the wrong parcel of property. Plaintiff owned two lots of property adjacent to one another, Lot 9 and Lot 10. Plaintiff alleges that the ELOC was to be secured by a mortgage upon Lot 9, but that it was actually recorded against Lot 10.

that, due to these events, he had to close his business which he valued at $100,000 per year.[2]

Plaintiff also alleges that his mortgage company refused to take checks from his Wells Fargo account and foreclosed on his home and an adjacent property. Plaintiff alleges that Wells Fargo mismanaged his accounts such that $4,000 disappeared and that Wells Fargo converted these funds. Finally, Plaintiff claims that as a result of these events, he was unable to file tax returns for three years. Plaintiff sued Wells Fargo alleging breach of contract, negligence, conversion, and violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), in addition to requesting an accounting.

Wells Fargo moves for summary judgment on Plaintiff's claims. In addition, Wells Fargo has asserted a counterclaim against the Plaintiff, asserting that Plaintiff used the full extent of the lines of credit made available to him and has defaulted upon his obligation to repay these funds. Wells Fargo alleges Boone owes the principal amount of $83,933.64, plus interest and attorneys fees. Wells Fargo seeks summary judgment against Plaintiff regarding these amounts.

---

[2] Plaintiff does not specifically explain how he arrived at this figure and does not identify the amount of income he received from Craft Plumbers. His Social Security Statement dated January 23, 2007, indicates that Plaintiff reported taxed social security earnings of $1,109 in 2001, $2,679 in 2002, and $0 in 2003, 2004, and 2005.

# DISCUSSION

## I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.,* 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Planned Parenthood of Minn./South Dakota v. Rounds,* 372 F.3d 969, 972 (8th Cir. 2004); *Fenney v. Dakota, Minn. & E. R.R. Co.,* 327 F.3d 707, 711 (8th Cir. 2003). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256.

## II. Plaintiff's Claims

Wells Fargo argues it is entitled to summary judgment as to all of Plaintiff's claims. The Court agrees.

### A. Breach of Contract

Plaintiff contends that Wells Fargo breached its contract with him by failing to make available a $5,000 line of credit for overdraft protection and by failing to make the $60,000 ELOC operate as additional overdraft protection.[3] Wells Fargo contends that no breach of contract occurred. Wells Fargo argues that Plaintiff received all of the overdraft protection required pursuant to the contracts between the parties and that the ELOC, by its terms, did not include overdraft protection among its features.

#### 1. $5,000 Overdraft Protection

According to the record, the Plaintiff had a $5,000 PLOC that included an overdraft protection feature, as well as a business card account, and a $15,000 BLOC. (Aff. of Amy L. Schwarz ("Schwarz Aff.") ¶ 2, Ex. 1 at Exs. 2, 5; Aff. of Michael Cocherell ("Cocherell Aff.") ¶ 8, Ex. 2.) Wells Fargo indicates that it refused to honor checks only when the Plaintiff had no remaining available credit. Plaintiff has not produced any evidence to refute this argument. Therefore, the Court must agree with

---

[3] Plaintiff's Complaint alleged Wells Fargo breached its contract by failing to automatically deposit the $60,000 ELOC into his checking account. (Compl. ¶ 39.) In his deposition, however, Plaintiff explained that he expected the ELOC would operate as overdraft protection for his checking account. (Schwarz Aff. ¶ 2, Ex. 1 at 40.)

5

Wells Fargo that at least $5,000 of overdraft protection was made available to the Plaintiff under his contracts with Wells Fargo. The Court grants Wells Fargo summary judgment on this claim.

### 2. $60,000 ELOC as Overdraft Protection

Plaintiff contends that the ELOC was to provide overdraft protection for his checking account and that Wells Fargo's failure to ensure that the ELOC functioned in this fashion resulted in a breach of contract. The record does not support this claim.

Under Minnesota's statute of frauds regarding credit agreements, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. A "credit agreement" is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, *or to make any other financial accommodation*." Minn. Stat. § 513.33, subd. 1(1) (emphasis added). An agreement to provide overdraft protection would be a financial accommodation and must, therefore, be in writing.

The agreement by which Plaintiff obtained the ELOC, the EquityLine with FlexAbility (SM) Agreement and Disclosure Statement ("ELOC Agreement"), does not provide for overdraft protection. The agreement does not contain the word overdraft or provide any express indication that the ELOC will function as an overdraft protection device.

Nevertheless, Plaintiff claims that the ELOC's overdraft protection function is provided by the contract. Plaintiff points to the ELOC Agreement's recitation of the

6

methods by which an ELOC advance could be requested. This provision allows advances to be requested in person, by telephone, by a special check or draft, by utilizing an automated teller card, check card, or EquityLine Platinum card, in addition to requesting an advance "[i]n other ways [Wells Fargo] authorizes from time to time." (Schwarz Aff. ¶ 2, Ex. 1 at Ex. 3.) Plaintiff claims that the overdraft protection feature of the agreement was an additional way Wells Fargo authorized advances to be made.

To make this argument, however, Plaintiff relies on evidence from conversations he had with Wells Fargo employees to show that overdraft protection was contemplated as a feature of the ELOC. In his deposition, Plaintiff indicated that when he initially approached Wells Fargo regarding opening the ELOC, he met with a banker named Terry Smith ("Smith"). According to the Plaintiff, he and Smith discussed a number of issues regarding the ELOC, including the relationship between his existing checking account and the ELOC. Plaintiff stated that they discussed that he:

> would be able to write checks from [his] business checking account to pay off [his] company vehicle and other larger purchases, to use [his] company checking account to pay those purchases off and that would be deducted from the equity line.

(Schwarz Aff. ¶ 2, Ex. 1 at 26.) When asked whether he and Smith had discussed "the particulars of how money would be transferred," Plaintiff said they had not had such a discussion. (*Id.* at 27.)

Plaintiff also stated that when he signed the paperwork to obtain the $60,000 ELOC, he questioned a Wells Fargo administrative assistant who was handling the paperwork, asking: "Will I be able to use my business checking account to access these

funds?" (*Id*. at 34.) According to Plaintiff, the staff member replied, "Yes," and there was no further dialogue about the issue. (*Id*. at 35.)

Wells Fargo argues that the parol evidence rule bars consideration of these conversations. "[W]hen parties reduce their agreement to writing, parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement." *Hruska v. Chandler Assocs., Inc.,* 372 N.W.2d 709, 713 (Minn. 1985). Thus, "[t]he parol evidence rule 'prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing.'" *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.,* 664 N.W.2d 303, 312 (Minn. 2003) (quoting Richard A. Lord, Williston on Contracts § 33:1 (4th ed. 1999)). If it appears from the circumstances surrounding a case that the parties did not intend an agreement to be a complete integration, parol evidence can be used to prove the existence of a separate consistent oral agreement. *Bussard v. Coll. of St. Thomas, Inc.,* 200 N.W.2d 155, 161 (1972). A merger clause, however, "establishes that the parties intended the writing to be an integration of their agreement." *Alpha Real Estate Co.,* 664 N.W.2d at 312. Here, the ELOC Agreement contains a merger clause directly above Plaintiff's signature indicating that "the terms of this [ELOC] Agreement replaces [sic] the terms of any prior oral or written agreements, including for example, any and all commitment letters and pre-approval letters between [Wells Fargo] and me." (Schwarz Aff. ¶ 2, Ex. 1 at Ex. 3.)

Plaintiff argues, however, that an exception to the parol evidence rule exists to prevent it from excluding "evidence of fraudulent oral representations by one party which induce another to enter into a written contract." *Johnson Bldg. Co. v. River Bluff Development Co.*, 374 N.W.2d 187, 193 (Minn. Ct. App. 1985). Plaintiff contends that this exception applies here because Plaintiff based his understanding of the ELOC Agreement upon Wells Fargo's representation that it would include an overdraft protection feature.[4] Plaintiff's argument fails for several reasons.

First, when parol evidence is admitted to support a party's allegation of fraud in the inducement, such evidence is not admitted to vary the terms of the contract. *Id*. Instead, parol evidence is admissible in such a case "to establish that, because of such fraudulent representations, no enforceable contract was made." *Id*. Therefore, this exception would not permit the Plaintiff to import into the contract a term providing for overdraft protection.

Second, Plaintiff's own testimony does not support his argument that overdraft protection was contemplated under the ELOC Agreement as a method by which Plaintiff could obtain an advance from the account. Plaintiff testified at his deposition that he had a conversation with Smith during which they discussed deducting money from the ELOC, but he admits that they did not discuss how money would be transferred. Plaintiff also testified that he asked whether he could use his checking account to access the ELOC funds and was told that he could. Neither of these interactions support Plaintiff's

---

[4] The Court notes that Plaintiff did not plead fraud in his Complaint. Notwithstanding that, the Court will address this argument.

argument that Wells Fargo orally authorized Plaintiff to obtain advances from his ELOC in the form of automatic overdraft protection, or that overdraft protection was even specifically discussed. Further, neither of these conversations are evidence that Plaintiff was induced to sign the ELOC Agreement through fraud. In the first conversation, the parties did not discuss how transfers of funds would be accomplished. In the second conversation, the assistant merely confirmed that Plaintiff could access ELOC funds via his business checking account; Plaintiff could, in fact, do so by transferring money from the ELOC to the checking account. Therefore, the fraud exception to the parol evidence rule is inapplicable and the parol evidence rule bars consideration of the prior oral representations that Plaintiff alleges supply additional contract terms.

Finally, Plaintiff argues that Wells Fargo took responsibility for the problems with Plaintiff's account, and by acknowledging its error with respect to the overdrafting problem with Plaintiff's accounts, Wells Fargo has admitted that the ELOC was intended to provide overdraft protection. The record shows that Plaintiff obtained letters written by Michael Cocherell ("Cocherell"), a private banker with Wells Fargo, to show to creditors with whom he was having difficulty due to checks returned for insufficient funds. In the letters, Cocherell stated that internal errors caused checks to be returned and he asked creditors to disregard returned items for a specific period of time. Cocherell indicates that he provided these letters as a customer service to Plaintiff even though the information he supplied was not true. (Cocherell Aff. ¶ 10.) Such a letter is insufficient to vary the terms of the ELOC Agreement or to provide additional terms in satisfaction of Minnesota Statute § 513.33. Cocherell's letters do not specifically mention the ELOC or

overdraft protection, are not signed by both parties, do not express consideration or set forth any other terms and conditions, and relate only to a short period of time.

Even construing the facts in Plaintiff's favor, this evidence is insufficient to create a genuine issue of material fact regarding whether the ELOC Agreement provided overdraft protection. The statute of frauds applies to the ELOC agreement, and the Court will not consider Plaintiff's parol evidence to vary the terms of the contract, which do not provide for overdraft protection. Further, Plaintiff's argument that Wells Fargo admitted it erred by failing to provide overdraft protection is insufficient to vary the terms of the contract. Therefore, Wells Fargo is entitled to summary judgment on Plaintiff's breach of contract claim regarding the ELOC.

### B. Negligence

Plaintiff contends that Wells Fargo owed him a duty to establish and service his accounts properly and that Wells Fargo breached this duty, thereby harming Plaintiff. Minnesota does not recognize a tort action for negligent breach of contract and, therefore, a tort claim must be based upon a duty independent of the contract. *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983). Plaintiff identifies no tort theory on which he relies and his claim, in essence, is one for breach of contract. The Court has already held that Plaintiff cannot maintain a claim for breach of contract relating to his allegation that Wells Fargo failed to provide overdraft protection.

Plaintiff identifies one other claim as falling within this negligence cause of action. Plaintiff asserts that Wells Fargo recorded its mortgage on the wrong property. According to Plaintiff, Wells Fargo should have recorded its mortgage securing the

ELOC on one lot of property he owned, Lot 9, but instead Wells Fargo recorded the mortgage on the adjacent land, Lot 10.

Wells Fargo's mortgage on Lot 10 was a second mortgage behind Plaintiff's first mortgage lender in priority. Wells Fargo did not initiate the foreclosure upon this property and when the foreclosure was completed, Wells Fargo did not receive any funds from the sale of Plaintiff's properties. Thus, the outcome in this case is the same as that which Plaintiff could obtain by suing Wells Fargo to avoid its mortgage, namely Wells Fargo's loss of its interest in the secured property. Plaintiff has not identified any cognizable additional harm he suffered or any benefit Wells Fargo received. Therefore, Wells Fargo is entitled to summary judgment on this claim as well.

### C. Conversion

Plaintiff claims that Wells Fargo converted $4,000 of his funds. Conversion is an act of willful interference with personal property that deprives another of its use and possession without lawful justification. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn. 1997). The elements of common-law conversion are: (1) the plaintiff has a property interest; and (2) the defendant deprived the plaintiff of that property interest. *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 838 (Minn. Ct. App. 1994).

The record shows that on September 15, 2004, an advance in the amount of $4,000 was made from Plaintiff's PLOC, but that this advance was reversed the same day. (Cocherell Aff. ¶ 14, Ex. 14.) Also on September 15, 2004, an advance in the amount of $4,000 was made from Plaintiff's ELOC account and a deposit in the same amount was made to Plaintiff's checking account. (*Id*. Exs. 80, 81.)

Plaintiff does not dispute that $4,000 was advanced from his ELOC and placed into his checking account. Plaintiff contends, however, that $4,000 remained missing from his PLOC account. Plaintiff's argument ignores the evidence that the PLOC transaction was reversed and the net change in the funds in Plaintiff's account was zero. Therefore, Wells Fargo did not convert Plaintiff's funds and is entitled to summary judgment on this claim.

### D. Request for an Accounting

Plaintiff demands an accounting from Wells Fargo. Before the duty to provide an accounting arises, a plaintiff must show "the confidential or fiduciary relationship between the parties." *Physicians & Hosps. Supply Co. v. Johnson*, 44 N.W.2d 224, 229 (Minn. 1950); *see also Security Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1352 (D. Minn. 1990) (holding that in order to obtain the equitable relief of an accounting the plaintiff must show a fiduciary relationship existed). The existence of a fiduciary relationship is generally a question of fact. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007). Fiduciary relationships arise when one person trusts and confides in another who has superior knowledge and authority. *Id.* at 330. A "fiduciary" is "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship." *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009) (*quoting* Black's Law Dictionary 658 (8th ed. 2004)). The duty imposed on fiduciaries is "the highest standard of duty implied by law." *D.A.B. v. Brown,* 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).

The relationship between a bank and its customer is not a fiduciary relationship, but is one of a creditor and debtor. *Impulse Trading, Inc. v. Norwest Bank Minn., NA*, 870 F. Supp. 954, 961 (D. Minn. 1994); *see also Hurley v. TCF Banking and Sav., F.A.*, 414 N.W.2d 584, 587 (Minn. Ct. App. 1987). Nonetheless, Plaintiff argues that a special circumstances exception applies because Wells Fargo knew that Plaintiff lacked an understanding of his accounts and was relying on Wells Fargo to assist him.[5] *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 623 (Minn. 1972) (holding that a bank generally owes no special duty to a customer "unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank to counsel and inform him").

The evidence here does not show that special circumstances existed that would remove the relationship between Plaintiff and Wells Fargo from the standard debtor-creditor relationship and make Wells Fargo a fiduciary. Plaintiff's position with respect to Wells Fargo was that of a depositor and a borrower. Plaintiff was not the beneficiary of a trust administered by Wells Fargo as trustee. *See Swenson*, 764 N.W.2d at 601 (noting *per se* fiduciary status of relationship between trustee and beneficiary). There also is no evidence that Plaintiff was relying upon Wells Fargo for investment or other specialized advice with regard to his funds. Therefore, the Court finds that Plaintiff

---

[5] At oral argument in this matter, Plaintiff's counsel asserted that Plaintiff's mental functioning was not at an average level and suggested that Plaintiff may suffer from a disability. Plaintiff had never before made such claims and there is no evidence regarding his level of functioning in the record. Therefore, the Court will not address this argument.

has not established a fiduciary relationship existed and is not entitled to an accounting.[6] The Court concludes Wells Fargo is entitled to summary judgment regarding Plaintiff's claim for an accounting.

### E. Fair Credit Reporting Act

Plaintiff claims Wells Fargo willfully violated the FCRA by "failing to conduct a reasonable investigation upon receiving notice of Plaintiff's dispute, failing to appropriately report the results of its investigation, and/or failing to appropriately modify, delete, and/or block the information." (Compl. ¶ 52.) Wells Fargo, however, argues that it fulfilled any obligation it had under the FCRA.

Wells Fargo contends that it received a notice from one consumer reporting agency, which is the triggering event for its obligations under the FCRA. 15 U.S.C. § 1681s-2(b)(1) (imposing duties after a report under 15 U.S.C. § 1681i(a)(2) is received); 15 U.S.C. 1681i(a)(2)(A) (providing that "[b]efore the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person). The consumer reporting agency indicated that its records show it notified Wells Fargo of two instances on January 25, 2006, that Plaintiff was disputing accounts that

---

[6] Wells Fargo contends that, notwithstanding that it has no fiduciary duty to provide an accounting, it has provided Plaintiff with all of the documents it possesses regarding his accounts. The Plaintiff has not refuted this assertion.

15

Wells Fargo reported as current, paid as agreed, and never late. (Schwarz Aff. ¶ Ex. 4 at 6.) In response to this request, Wells Fargo confirmed that Plaintiff's accounts were current, paid as agreed, and never late. (*Id*. at 7.)

Wells Fargo reported positive information about Plaintiff's accounts. (*Id*. at 12-14.) Plaintiff has not produced any support for a claim that this information was inaccurate, and if so, the damages he sustained as a result of this positive report.[7] Therefore, the Court grants Wells Fargo summary judgment as to the FCRA claim.

### F. Fair Debt Collection Practices Act

Plaintiff claims that Wells Fargo violated the FDCPA by reporting a disputed debt to a consumer reporting agency without reporting that the debt was disputed.[8] (Compl. ¶ 57.) The FDCPA provides that it is a violation of the statute for a debt collector "to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Wells Fargo, however, is not a "debt collector" under the FDCPA.

Section 1692(a)(6) of the FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

---

[7] Plaintiff's responsive memorandum does not address the FCRA claim.

[8] Plaintiff's responsive memorandum does not address his FDCPA claim.

15 U.S.C. § 1692(a)(6). Wells Fargo is not principally engaged in collecting the debts of another or in collecting its own debts under a name other than its own. Wells Fargo's function was that of a creditor, not of a debt collector. Therefore, Plaintiff cannot maintain an FDCPA claim against Wells Fargo and Wells Fargo is entitled to summary judgment on this claim.

### III. Wells Fargo's Counterclaim

Wells Fargo has asserted a counterclaim against the Defendant, contending that he exhausted all the lines of credit available to him and has not repaid any of the amounts that he owes. Wells Fargo supports this claim through extensive documentation of Plaintiff's loan documents and his financial transactions. (*See generally* Cocherell Aff.) According to Wells Fargo, Plaintiff is indebted to Wells Fargo in the principal amounts of $59,261.41 on the ELOC, $4,692.43 on the PLOC, $15,083.52 on the BLOC, and $4,896.28 on the Business Card. (Cocherell Aff. ¶ 16.) Wells Fargo asserts interest is owed on each account as follows: $8,257.40 as of March 26, 2009, plus $7.79 per day on the ELOC; $1,645.90 as of March 26, 2009, plus $1.51 per day on the PLOC; $6,286.26 as of March 26, 2009, plus $4.96 per day on the BLOC; and $4,033.22 as of March 26, 2009, plus $3.49 per day on the Plaintiff's business card. (*Id.*)

Plaintiff responds by stating only that summary judgment should be denied because of "numerous genuine issues of material facts [sic] regarding [Plaintiff's] accounts" and that such issues of fact are "sprinkled throughout each and every cause of action." (Pl.'s Mem. of Law in Opp. To Def.'s Mot. for Summ. J. at 18-19.) Plaintiff's

response is insufficient. A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256. Plaintiff has not set forth specific facts showing that there is a dispute regarding whether he used the full amount of his lines of credit, and the Court has determined that no issues of material fact remain and Wells Fargo is entitled to summary judgment regarding Plaintiff's claims. Further, Plaintiff has not put forth any evidence challenging the specific amounts Wells Fargo asserts are due. Therefore, the Court grants summary judgment to Wells Fargo regarding its counterclaim against Plaintiff. The total principal and interest owed as of the date of this order is $106,091.17.

In addition to the amounts Wells Fargo identifies, it also alleges it is entitled to attorney fees and costs of collection. Plaintiff has not identified any evidence disputing that his loan documents provide for such relief. Wells Fargo, however, has not indicated the amount of attorney fees and costs it seeks. The Court will, therefore, require Wells Fargo to file an affidavit setting forth its requested attorney fees and costs to which the Plaintiff may respond.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant and Counterclaimant Wells Fargo Bank, N.A.'s Motion for Summary Judgment on Plaintiff's Complaint and Wells Fargo's Counterclaim (Doc. No. 23) is **GRANTED**.

2. Wells Fargo is entitled to judgment against Plaintiff in the amount of $106,091.17, which amount represents principal and interest owing as of the date of this Order.

3. Wells Fargo shall file an affidavit regarding attorney fees and costs within seven (7) days after entry of this Order. Plaintiff may file a response within seven (7) days of the filing of Wells Fargo's affidavit.

4. The Court shall issue a single, final judgment after determining the amount of attorney fees and costs to be awarded.

Dated: July 13, 2009     s/Donovan W. Frank
                         DONOVAN W. FRANK
                         United States District Judge